Yes, we are ready to hear argument in our next case. Argueta v. Barr for the petitioner. Please be quiet. My name is Don Schlemmer. I represent petitioner Yonis Del Cid Argueta. The petitioner challenges the final order of the Board of Immigration Appeals decided by one judge which affirmed the immigration judge's decision that he is statutorily ineligible for cancellation of removal because of his 2013 marijuana possession charge, rendering him inadmissible despite his status as a lawfully admitted immigrant. He is a lawfully admitted permanent resident not seeking admission to trigger the stop time rule to end his clock for the continuous residence nine months short of the seven year threshold to bar him from seeking cancellation. The issue here is one of first impression for the court whether the stop time rule for cancellation of removal can be triggered by an offense that renders inadmissible a lawful permanent resident such as the petitioner who is already present in the United States not seeking admission. We ask the court not to decide whether the petitioner should be granted cancellation of removal but that he who conceded his deportability not on the 2013 charge but on other charges only be given the opportunity to seek relief from removal, an opportunity denied by the board and the immigration judge. The plain text of the stop time rule, under that plain text a non-citizen can be rendered inadmissible by a qualifying offense if he is admitted to and present in the United States. In this case if we were to hold for petitioner would we in essence be letting him escape the consequences of his criminal conviction? Absolutely not your honor because the whole point of the cancellation of removal rule is to give the petitioner a second chance, there's no guarantee that he is going to remain a permanent resident that he is today. What petitioner wants is just that the rules be applied fairly to him and correctly. That's exactly correct your honor and also we'd ask the court to look at the harsh consequences for not only the petitioner, the cancellation of relief is basically to benefit the U.S. citizens and permanent resident immediate family members. In other words, he has to go to the immigration judge and the judge has to determine if he does not continue in his permanent resident status, would that cause an extreme hardship to his immediate family members? So we would ask the court to remember that in the context of what the government is attempting to do here and its interpretation of the statute. The petitioner's present admission status as a lawful permanent resident who is not seeking admission forecloses inadmissibility. A non-citizen's admission status is clearly critical in determining the statutory grounds under which he may be subject to removal. Can I ask, I'm just trying to make sure I understand the sort of argument. Your argument under the stop time rule is that there's an inadmissible bucket and a removable bucket. Inadmissible 1182, removable 1227. Correct your honor. And that an individual like your client who's an LPR can never fall in the inadmissible bucket, he only falls or doesn't within the 1227 bucket. With a few exceptions. You're anticipating well. So what are the exceptions? First of all, what happened is that it used to be before IRA, IRA, you were... Forget that, but go to the exceptions first and then you can explain pre-IRA. Under the current law, all permanent residents are deemed admitted. They're all deemed, they're all allowed to return and they're not deemed admissible. They're just a returning alien. And those six exceptions have to do with various statutes of... This is 110113C I assume is where you are. 110113C, alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission into the United States for the purposes of immigration law subject to six exceptions. One, abandonment or relinquishing... So I read those, but tell me why five is not your client. Because he is not seeking admission. He's never... That's a circle. I mean, you admit he falls within the category of five, right? He has committed an offense identified under 1182A2. It's possible you could say that's yes. Yes, Your Honor. It's possible. Okay. I'll take that. I think that's just, yeah. I'm not trying to get you to concede something you don't want to. But let's hypothesize that he has been convicted of... Or he has committed an offense under 1182A2. So if he satisfies subsection five, tell me why he doesn't fall within this exception. Because you sort of say this is the exception where an LPR can be found under your reading inadmissible. Why does his presence or qualification under subsection five not remove your guy from even your own reading? He doesn't fall into that category. He has to become inadmissible. He has to be seeking entry into the United States. These terms are whether he's seeking admission. In other words, when you come back to the country, all permanent residents shall not be regarded as seeking admission. That's if he's returning. It doesn't say anything about when he's returning, right? I mean, the only time where it says he's returning is, like, in six, right, where he's attempting to enter. So that's where he's attempting to enter or where he's departed. That's under four. But why is five? It doesn't say anything in five about seeking to come back or whatever the phrase is used. What I'm saying is it's clear that, for example, if you go to 101A13A, the terms admission, admitted means that with respect to the alien, the lawful entry of an alien into the United States after inspection and authorized by an immigration officer. So to be deemed admitted, he has to leave. These statutes don't. I'm sorry. I thought you said he's admitted when his status is adjusted to LPR. That's the sort of. Yes. But he is admitted when his status adjusts in this case. Do you see what I'm saying? I mean, we're in this 13C bucket, and he's not. I'm with you. Even under your reading that he wouldn't be seeking admission unless he's been, you know, has committed an offense under 1182A2. Yes. Which we're positing here that he has. But we're saying he's been charged with removability. He's not seeking admission. He's not seeking admission. He's never sought admission. And I'm with you where it says it shall not be recorded as seeking admission. It's true. He was admitted when he adjusted. But now he's being charged with removability. He's not being charged with indemnizability. The notice to appear in this case does not charge him with indemnizability. So maybe that's the argument. In your view, does the ground of removability have to be the same as the stop time rule? Is that the argument? No. The argument is basically he's not seeking admission. So, therefore, he's not inadmissible. And, therefore, that section of the law does not apply to him. He's not deemed inadmissible because he's not seeking admission. He is in the United States. He was admitted long ago. And he is being charged with removability. And he has conceded that. Can you distinguish Petitioner's case from the situation we had in Jogori, the Fourth Circuit case? In that case, no, I can't. Judulong versus Holder? J-A-G-O-O-R-I. The government cites it in their brief. Judulong is not a president. That's a board decision, I believe. And it's not a presidential. It was on this issue before. I think we might be talking about two different things. I'm talking about the Fourth Circuit case, Jogori, J-A-G-H-O-O-R-I versus Holder. Maybe you could look at it before you come back up in rebuttal. Okay. What we're saying, Your Honor, is that a noncitizen's admission status is clearly critical in determining the statutory grounds under which he may be subject to removal. It falls that admission status has operational importance in how the stop-time rule applies and distinguishes specific noncitizens seeking cancellation of removal. Although the stop-time rule operates in the context of relief eligibility, it does not exist in a vacuum. Unaffected by the underlying removal basis that the government contends, comparing the stop-time rule to 1229B1C evidences the Congress's intent to distinguish between inadmissible and deportable noncitizens in this application. Because the rule specifies and triggers, is triggered by a qualifying offense that renders the noncitizen inadmissible or deportable under separate specific provisions, its operations is predicated on the admission status of the specific noncitizen in its application. The government divorces inadmissibility from the context of seeking admission and creates a dangerously broad status of inadmissibility. The plain text of the stop-time rule provision is clear, is triggered by two conditions. First, the commission of a qualifying offense. And second, the immigration consequences stemming from the offense. For example, being rendered inadmissible or deportable, which is determined by the status of the specific noncitizen in removal proceedings. By ignoring the second conditional condition relates to the immigration consequence of the qualifying offense and the specific noncitizen, the government's interpretation permits any offense under 1182 to potentially render anyone inadmissible. The BIA's interpretation ignores the two-prong statutory construction of the stop-time rule provision and fails to recognize the statutory distinction between inadmissible and deportable noncitizens. In their submissions, the government wrongly focuses on the word renders as the key in their interpretation. We feel the government ignores basic rules of grammar. Congress's use of the word renders does not give inadmissibility a unique meaning in a stop-time rule. The government's interpretation by their own admission in pages 42 through 44 of their brief Your light is red. Pardon me? Your light is red. I'm sorry. You have time in rebuttal. Thank you. Maybe you could look up that opinion I asked you about. Thank you. It's in the government's brief. Thank you. Repeatedly. May it please the Court, Timothy Hayes on behalf of the Attorney General. That issue is whether a petitioner's February 2013 commission of unlawful marijuana possession renders him unable to establish seven years of continuous residence since his LPR adjustment in November of 2006. That's because under the stop-time rule, a person's period of continuous residence ends when two requirements are met. First, the person must commit an offense referred to in Section 1182A2 of the Immigration and Nationality Act. Among those offenses is one involving a controlled substance. Aren't the statutory schemes with respect to inadmissibility and deportation two separate statutory schemes? When it comes to removal charges, yes, it is because Congress has explicitly made that so. Were you not finished? No. It's all right. You know I'm having a hard time. You probably know what the question is going to be. I don't understand how somebody could be both deportable and inadmissible. Inadmissible implies you haven't been admitted yet. I don't know how you could be deported if you haven't been admitted yet. Well, Your Honor, I think the confusion lies in the fact that we're treating admission and inadmissible as interchangeable. They are not. They are separate terms in the Immigration and Nationality Act. Whether you are inadmissible is determined by whether you beat something in 8 U.S.C. 1182A. It doesn't necessarily mean to be A2, but A2 is criminal offenses. Admission is in an entirely different section that's in a definitional section. And admission only matters because to charge you with removal, to charge you and initiate removal proceedings, Congress says you have to be admitted to be charged with deportability and you have to be not admitted to be charged with inadmissibility. It has nothing to do with how, when the burden of proof is on the alien, how they have to show whether they are inadmissible or not with a relief application. So the exceptions that Judge Richardson was discussing in 8 U.S.C. 1101A13C, those don't relate to relief applications. Now, if he would have left and was put at the border, then that would have been triggered. But that was not triggered in this case because he did not leave. What matters in this case is whether he was inadmissible under 8 U.S.C. 1182A. If he didn't leave, then I don't know how he could be, I go back to I don't know how he could be inadmissible if he didn't leave. Well, Your Honor, the actual, well, I actually have it here. The actual subsection, okay, so the stop time rule reads, the person commits a offense referred to in 1182A2 that renders the alien inadmissible under 1182A2. So the stop time rule references 8 U.S.C. 1182A2. You go to 1182A2A Romanet 1, subsection 2. It says any alien convicted of, and then also has admission, but I'm going to omit that. So any alien convicted of any law or regulation of a state relating to a controlled substance is inadmissible. So once he was convicted, he was inadmissible. Now, he wasn't necessarily adjudicated inadmissible, but it doesn't have anything to do with whether he's admitted at the border or not. An alien is inadmissible. And to see that, you can look to other relief applications. For example, adjustment of status. There are many aliens charged with grounds of deportability. So they are already here legally, but they commit a crime. A lot of aliens who commit aggravated felonies, their only way to get relief from removal is by adjusting their status, by having an immediate relative petition for them on their behalf. In order to adjust your status, you have to show that you are not otherwise inadmissible. So you have an admitted alien where the ground has nothing to do with inadmissibility, but he might not be able to prove that he wasn't otherwise inadmissible because he might match one of these categories under 8 U.S.C. 1182A2. There is a distinction between inadmissibility and deportability with removal charges, but not with relief applications. Can I ask a specific example of that? And this is a little random, so if you don't know, just say you don't know. I'm not trying to get you to make something up. But 8 U.S.C. 1231A6 deals with mandatory detention of those that are found removable on whatever ground, whether they are deportable, having been previously admitted, or inadmissible, having never been admitted. And it provides for continued detention beyond the 90-day removal period if they have this status. That is, they are inadmissible under 1182. Is that another example of where your status is inadmissible affects your rights separate and apart from whether you remain in the country or not? It's how you go through that process? I'm not sure if that specific provision would be an example because it reads an alien ordered removed who is inadmissible. So if an LPR was ordered removed, and if you don't know, I really want you to say don't know. I'm not trying to get you to commit on this random question. But if an alien of LPR is ordered removed and they are inadmissible under Section 1182, doesn't that affect their detention rights? It does. It does, but in that case it actually has to be, at least my understanding, and please don't commit me to it, but my understanding is since it's relating to an NTA charge, they would look to what was charged in the NTA as a basis for removal because it has to do with detention status. Say that again? It says an alien who is ordered removed. So you're ordered removed under the charges in the NTA. NTA is? Oh, I'm sorry. I'm sorry.  I'm sorry you get so wrapped up in these acronyms. That's really fine. It's a charging document in immigration proceedings. So that's what actually, in order to initiate an immigration proceeding, someone has to be charged with either inadmissibility or deportability, not both. So you think at least it's possible, you're not committing one way or the other, it's possible that 1231A6, inadmissible under 1182, requires inadmissibility to be part of the NTA? Yes. I can't say definitively, but probably because it says an alien who is ordered removed. They could be ordered removed on any ground and then also be, I mean, that's sort of the, okay. Anyway, sorry. I know that's a little out of left field. But it would still need to be, it would still need a hearing before the board to actually determine whether the charge is valid. So, but, yeah, I apologize, Your Honor. So. Let me ask you the question about Jukori since it's actually in your brief and not petitioner's brief. In your brief, the government claims that in this Jukori case that we, quote, accepted that the renders inadmissible language applied to a permanent resident not seeking admission. You realize that issue was not before the court in Jukori. So we could not have accepted, it says, quote, accepted. We could not have accepted it. It wasn't an issue before the court. I agree with you, Your Honor. It wasn't a holding of the court. It's persuasive support for the suggestion that there is a separation between, you know, what you're charged with removability-wise and having established relief from removal and whether inadmissible or deportable. But it does not answer this exact question, no. It's a question of first impression. It's right. In fact, Mr. Jukori wasn't even arguing that. No. It was part of the court's reasoning in route to its holding, but it wasn't part of the holding, no. In zeroing in on the renders the alien inadmissible under 1182A2 part of the stop time rule, the phrase renders the alien inadmissible means that the offense must cause the alien to be or to become inadmissible in accordance with the requirements set forth in 1182A2, and that was satisfied here when he was convicted of his marijuana possession offense. He wasn't charged as deportable at that time, and I'm presuming it, because in order to be charged under the deportability ground for that, it excludes a single offense involving possession for one's own use of 30 grams or less of marijuana, and in 2013 that was a single offense. And from what I can tell from the record of conviction, it was less than 30 grams. So he actually was not placed in proceedings at that time, but if he was, that would have stopped time. The stop time rule is consistent with provisions that treat inadmissibility as a status, regardless of whether an alien is seeking an admission to this country. An admitted alien cannot adjust to the status if inadmissible. He cannot attain temporary protected status even if admitted to the country if otherwise inadmissible. He can't obtain registry, and he can't register for seasonal agricultural worker program benefits. Another distinction is an admitted alien can be rendered deportable if he was actually inadmissible despite being admitted, and that's 8 U.S.C. 1227 A1A. So all this just reinforces the concept that admission and inadmissibility aren't one and the same. They're different. Turning to the surplusage canon, I just want to step through to show why under the government's reading, there always will be some surplusage in the stop time rule, but there is no substantial surplusage. The referred to clause, which is the first part of it, restricts the university of offenses to those described in 1182A2. So there are certain offenses that would make someone deportable, most notably firearm offenses, but that wouldn't necessarily make the alien inadmissible. So if the alien is deportable for that, it wouldn't trigger the stop time rule because it's not listed in 1182A2. The second part is the renders inadmissible or removable clause, and I'll put those together two and three. The renders inadmissible part refers to the fact that not every offense referred to in 1182A2 would render an alien inadmissible, notably the crime involving moral turpitude provision, which is not an issue in this case, but it has two exceptions. One is quickly termed the juvenile exception because it applies to someone who commits a crime under 18. Just to clarify, this is different than what was in your brief because the government's changing position on the matter of Garcia. Right. That's exactly right. I wanted to just present that in case the court had any questions. So not every offense referred to in 1182A2 would render an alien inadmissible. The CIMT provision has a juvenile exception and a petty offense exception. So if one of those offenses was triggered, then the person would have committed an offense referred to in 1182, but that wouldn't render them inadmissible because it meets an exception to inadmissibility. So that's where that clause comes into play. And finally, we have renders the alien inadmissible or removable. The removable clause will capture those cases where the alien may not be rendered inadmissible. So say he committed it while being a juvenile or committed it and it meets a petty offense exception. It might. It might otherwise meet a deportability ground. Not necessarily. They're not one and the same, but it would capture some of those residual cases. And you can see congressional intent for this because the 1996 amendments, there were two amendments, but the primary one was what we call the IRR. Some people call it the IRR. But the second set of 1996 amendments were an overhaul of the Immigration and Nationality Act, and Congress was really targeting criminal aliens. So they were trying to broaden the basis for which an alien was not eligible for relief, and the stop time rule was actually introduced among those amendments. And unless your honors have any further questions. Thank you very much. Your Honor, I do have the case that you're referring to, and we did mention it in our. You might just want to agree with the judge on her distinction. Your Honor, we did find the case that you're referring to. We did refer to it on pages 2 and 19 of our briefs. Our position on that case is that the government distorts this court's decision by stating the court accepted that the rendered inadmissible language applies to a permanent resident not seeking admission. The court did not actually accept this point as the holding was on the retroactivity of the stop time rule to a pre-Ira-Ira offense, and we would refer you to. I know. I wrote the opinion. Okay. So you don't need to refer me to anything else. Maybe you can just go on with whatever argument you want to make. Okay. Thank you. Can I ask you to respond to a separate argument? So it says whether someone is rendered inadmissible under 1182. And we look at 1182, and there's sort of two parts to it, at least in one theory of this. And 1182A provides the consequences, right? That means you're ineligible for admission and visas and those sorts of things. That's the consequences. But then the subsections define who is, right? So the first part is the consequences. The second part defines who is. And so if you look at, like, 1182A2, it says any alien that meets this criteria, that is, a conviction, is inadmissible. And in doing that, it seems like to me what you're trying to have it say instead, instead of any alien, you're trying to say any alien seeking admission that has this conviction is rendered inadmissible. What we're saying is that that portion of inadmissibility is not applicable to an alien until he, for example, in this case that you're mentioning, he would leave. But so that's what I'm having trouble with. Because 1182A2 doesn't say that. It says any alien, not any alien seeking admission or any alien who's not admitted or any alien who's, right, which is particularly troubling, I think, for your argument. Because subsections 1, 6, 7, and 9 do say that, right? They do limit it to alien seeking admission. But the problem here is you have to look at the stop time rule as a whole, where it says any alien who's inadmissible or is removable. So there's different statutes that apply to the two different categories. One, if you're inadmissible, which this particular petitioner is not, and he's never been, he's probably never going to be inadmissible, he is removable. So that section is not applicable to him. The government in its brief acknowledges that this petitioner under the 227 provisions is eligible for cancellation. It's only the claim that sometime in the future he could become... No, no, but that's the distinction between the status and the consequence, right? The first sentence of 1182 gives consequences, but the subsections define who's in that status. And A2 defines it not as any alien seeking admission, but any alien, period. That means all aliens, which includes an LPR, right? If you look at the definition of alien, it includes anyone who's not a citizen. And so that means any alien under 1101, alien defined as including anyone who's not a citizen, so that would include your client, is inadmissible if they meet this criteria as a status. The consequence is in the first line, but that's separate from what he or she is rendered. Well, I believe that you could read it another way, Your Honor, and that would be... That's what I'm asking. So how would you read it separately? He's inadmissible at the time, and he's not inadmissible. That section of the law doesn't apply to him. What applies to him is the removability aspect of it. In other words, the law itself, the actual stop-time rule itself, has two different provisions, one for inadmissible aliens and one for removable aliens. He is not an inadmissible alien. He is a removable alien. Any period of continuous... The stop-time rule provides on page 8 of our brief, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when an alien has committed an offense referred to in Section 1182A2 of this title that renders the alien inadmissible to the United States under Section 1182A2 of this title or removable from the United States under Section 1227A2 or 1227A4, whichever is earliest. But he's not in that category of being an inadmissible alien. He is a removable alien. In your view, he can only be one of them? He can only be one or the other, and he is... And as succinctly as you can, why should I read it to be one or the other? Because Congress wrote it very clearly to make that distinction. The history of it, you have to read it in the context of the Immigration and Nationality Act, which has always made the distinction between inadmissible and removable or deportable. If it's one or the other, what use do you make of the final phrase of the stop-time rule, whichever is earlier, whichever is earliest? Like, that suggests it's not that you could qualify for both of them. Because if it's whichever is earlier, that means you could have qualified for one or the other. But whichever is earlier seems to rebut your argument that you can only fall in one of the two buckets. Yes, in other words, what I'm saying is you can't be inadmissible and removable at the same time. You cannot be admitted to the United States, as this petitioner was, and at the same time seeking to enter the United States. You can't do both simultaneously. You have to be one or the other. And Congress wrote this provision with that specific knowledge in mind. The history of the INA statutory language has always viewed one or the other. You're either a removable or deportable, or alternatively, you're seeking admission. Okay, if I may, there's just two things here. The government says that there's little certainty. Your red light is on and has been for a while. Thank you. Thank you. We'll step down and greet counsel and go to our next case.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing